RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
DATE  2 / 7 / 12

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| DAVID JOHN BRUMFIELD,<br>Appellant | CIVIL ACTION<br>SECTION "P"<br>1:11-CV-00488 |
| VERSUS | |
| U.S. COMMISSIONER OF SOCIAL SECURITY,<br>Appellee | JUDGE DEE D. DRELL<br>MAGISTRATE JUDGE JAMES D. KIRK |

## REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

David John Brumfield ("Brumfield") filed an application for social security disability insurance benefits ("DIB") on April 8, 2008, alleging a disability onset date of February 12, 2006 (Tr. p. 92) due to "torn herniated discs" at C6-7 and L3-4 and "severe degeneration of spine" (Tr. p. 117). That claim was denied by the Social Security Administration ("SSA") (Tr. p. 62).

A de novo hearing was held by an administrative law judge ("ALJ") on April 22, 2009, at which Brumfield was present with his attorney and a vocational expert ("VE") (Tr. p. 16). The ALJ found that, although Brumfield suffers from severe impairments of neck and low back pain (Tr. p. 11), he has the residual functional capacity to perform light work except for work involving more than occasional climbing, stooping, kneeling, crouching and crawling (Tr. p. 12), and therefore was not under a disability at any time through the date of her decision on July 20, 2009 (Tr. p. 15).

Brumfield requested a review of the ALJ's decision, but the Appeals Council declined to review it (Tr. p. 1), and the ALJ's

decision became the final decision of the Commissioner of Social Security ("the Commissioner").

Brumfield next filed this appeal for judicial review of the Commissioner's final decision. Brumfield raises the following issues for review on appeal:

> 1. The ALJ failed to properly evaluate Brumfield's residual functional capacity and failed to comply with SSR 96-8p.
>
> 2. The ALJ failed to properly evaluate the medical opinion evidence and failed to comply with SSR 96-2p.
>
> 3. Consequently, neither the ALJ's residual functional capacity finding nor her Step 5 finding is supported by substantial evidence.

The Commissioner answered Brumfield's appeal (Doc. 9) and Brumfield filed a brief in response (Doc. 10), to which the Commissioner replied (Doc. 11). Brumfield's appeal is now before this court for disposition.

## Eligibility for DIB

To qualify for disability insurance benefits, a plaintiff must meet certain insured status requirements, be under age 65, file an application for such benefits, and be under a disability as defined by the Social Security Act. 42 U.S.C. 416(i), 423. Establishment of a disability is contingent upon two findings. First, a plaintiff must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. 423(d)(1)(A). Second, the

impairments must render the plaintiff unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. 423(d)(2).

## Summary of Pertinent Facts

### 1. Medical Records

Brumfield reported being injured at work (as an offshore welder) in February 2006, suffering a fall which resulted in numbness at the time of the accident and pain the next day with bruising of the right leg, swelling in the right foot, and blackened toes (Tr. p. 157). Brumfield was given pain medication, but subsequently began having neck and back pain (Tr. p. 157).

In July 2006, Brumfield was evaluated by Dr. John E. Cobb for complaints of lower back pain radiating down the back of his right leg (Tr. p. 153). Dr. Cobb found Brumfield was 5'9" tall, weighed 220 pounds, had an upright posture and an unrestricted range of upper thoracic motion, was neurologically normal, had a normal gait, had normal motor function of the lower extremities, and that straight leg raising induced back pain bilaterally (Tr. pp. 154-155). Brumfield's cervical spine x-rays showed spondylosis primarily at C5-6, and his lumbar x-rays showed diffuse degenerative changes with traction spurs and osteophytes at multiple levels (Tr. p. 155). Dr. Cobb recommended MRIs and physical therapy, and prescribed Lortab and Flexeril (Tr. p. 155).

A cervical MRI taken in July 2006 showed desiccated discs with

3

herniation at C5-6 and C6-7. A lumbar MRI showed an L3-4 disc and annular tear, eccentric to the right and L4-5 left paracentral. (Tr. p. 158). Dr. Cobb proposed interlaminar injections at C6-7 and L2-3, refilled Brumfield's Lortab prescription, and stated that Brumfield continued to be unable to work (Tr. p. 158).

In March 2007, Brumfield underwent interlaminar epidural injections (Tr. pp. 165-166) to treat his cervical disc disease with radiculitis, and lumbar spondylosis and disc disease with radiculitis (Tr. p. 165-166).

On April 23, 2008, Dr. Cobb re-evaluated Brumfield for constant aching and stabbing pain in his neck and lower back with pain occasionally radiating down his legs (Tr. p. 159). Brumfield said he has pain with activity and that pain wakes him from sleeping (Tr. p. 159). Brumfield was 5'7" tall and weighed 225 pounds (Tr. p. 161). Brumfield had tenderness in his cervical spine, full flexion with complaints of pain in the cervicothoracic and interscapular area, but restricted extension and rotation with pain (Tr. p. 161). Brumfield did not complain of numbness in the upper extremities and his motor and sensor function and grip strength were normal (Tr. p. 161). Dr. Cobb recommended getting current MRIs and prescribed Lortab, Soma, Mobic, and a Medrol Dosepak (Tr. p. 162).

In July 2008, Dr. Cobb found multiple levels of disc abnormalities in the lumbar area, central protrusion at L3-4 with

narrowing of the neuroforamen, left disc protrusion at L4-5, and disc protrusions at C5-6 and C6-7 (Tr. p. 176). Dr. Cobb recommended new MRIs and presented an option for cervical surgery- an anterior cervical discectomy and fusion with a plate at C5-6 and C6-7 (Tr. p. 177). Dr. Cobb prescribed Flexeril and Lortab (Tr. p. 177).

The final medical record is dated March 17, 2009 and is from the emergency room at the LSU Health Sciences Center, where Brumfield was prescribed Lortab, Flexeril, Hydroxyzine Hydrochloride, and Lorcet for pain (Tr. pp. 179-180).

## 2. Administrative Hearing

At Brumfield's April 22, 2009 administrative hearing, Brumfield testified that he was 43 years old and lived in a mobile home with his step-son (Tr. p. 20). Brumfield testified that he has an eighth grade education (Tr. p. 21), he has taken welding classes (Tr. p. 21), and he last worked as a welder on February 12, 2006 (Tr. p. 21). Brumfield testified he has also worked as a glazer for three or four years (Tr. p. 21), and has done general labor in the construction industry (Tr. pp. 21-22). Brumfield testified that he has never had a desk job; he has only done physical labor (Tr. p. 33).

Brumfield testified that, on February 12, 2006, while at work offshore, he was told to board the boat; when he did so, he slid on the wet jump deck, fell, and hit the iron on the boat (Tr. p. 22).

Brumfield testified that he has pain, stiffness and discomfort in his lower back and neck, and sometimes in his right leg (Tr. p. 23). Brumfield testified he no longer sees Dr. Cobb because he cannot afford to, so he goes to Huey P. Long Medical Center (Tr. p. 24). Brumfield testified his MRI was scheduled for next month (Tr. p. 24). Brumfield testified that he has problems sleeping and takes medication for that (Tr. p. 27). Brumfield testified that he naps during the day (Tr. p. 30). A side effect of Brumfield's medicine is sleepiness (Tr. p. 30). However, Brumfield does not believe his medication impairs his thinking (Tr. p. 30). Brumfield also testified he has problems with his right shoulder sometimes, he thinks in his rotator cuff, so he can reach overhead with his arm but cannot pick anything up with it and cannot lift anything overhead with it; Brumfield is right-handed (Tr. p. 57). The heaviest thing Brumfield picks up is a gallon of milk from the refrigerator, about twice a day (Tr. p. 58).

Brumfield testified his pain is worse if he stays in one position very long or stands too long, bends over, or tries to walk a long distance (Tr. p. 24). Brumfield testified he is taking Darvocet, Lortab, and Flexeril for pain (Tr. p. 24).

Brumfield testified that, on an normal day, he gets up and takes his medicine, has coffee, showers, and watches TV (Tr., p. 25). Brumfield testified that his step-son does the cleaning, mopping, vacuuming, laundry, dishes, grocery shopping, and outside

work (Tr. pp. 25-26). Brumfield testified that he can lift one grocery bag that is not too heavy, but does not normally handle the groceries (Tr. p. 25). Brumfield testified he can carry a gallon of milk from the counter to the refrigerator (Tr. p. 26). Brumfield testified that he spends most of his time on the couch (Tr. p. 26). He used to hunt and fish, but does not anymore; instead, he plays on his computer (Tr. p. 27). Brumfield testified that he can use a computer and use a search engine, but he cannot type (Tr. pp. 30-31). Brumfield testified that he does not visit family or friends very often, does not go to church, and does not go to clubs, restaurants or bars (Tr. p. 26). Brumfield testified that his step-son works at a plywood plant (Tr. p. 26).

Brumfield testified that he can walk about a block or a block-and-a-half without stopping, he can stand for about ten minutes, and he has to change positions when he sits very long (Tr. p. 28). However, he walks very slowly and it hurts to walk sometimes (Tr. p. 29). Brumfield testified that he does not have problems with his hands, does not have trouble getting along with people, and does not have trouble following instructions (Tr. p. 29). Brumfield testified that he has been told he needs glasses (Tr. p. 34). Brumfield testified he cannot stand for 6 hours in an eight hour day because of stiffness in his right leg, and he could not sit at a desk for six hours in an eight hour day every day because he would need to stand up sometimes (Tr. pp. 56-57).

7

Brumfield testified that he has depression and anxiety, but does not see a doctor because he cannot afford to (Tr. p. 32). Brumfield testified that he was not aware of any mental health treatment at Huey P. Long Medical Center (Tr. p. 32). However, he has been prescribed Xanax for sleep (Tr. p. 33).

The VE testified that construction labor is very heavy work, and pipe welding is heavy labor (Tr. pp. 40-41). The ALJ posed a hypothetical question about a person of Brumfield's age, education, and vocational experience who can do light work with occasional climbing, stooping, kneeling, crouching, and crawling (Tr. p. 41). The VE testified that such a person would not be able to do his past relevant work, but could do unskilled, light work such as working as a light cashier (SVP 2, DOT 211.462-010, 1,276,892 jobs nationally and 23,603 jobs in Louisiana), a light stock clerk (SVP 2, DOT 209-587-034, 247,000 jobs nationally and 2855 jobs in Louisiana), a light groundskeeper (SVP 1, DOT 405.687-010, 77,235 jobs nationally and 683 jobs in Louisiana), or a light lobby attendant/ticket taker (SVP 2, 334.667-010, 113,234 jobs nationally, 1209 jobs in Louisiana).

The ALJ posed a second hypothetical involving a person of Brumfield's age, education, and vocational experience, who can only do sedentary work with occasional climbing, stooping, kneeling, crouching, and crawling (Tr. pp. 42-43). The VE testified that such a person could work as a bookkeeping clerk (SVP 2, DOT

8

219.587-010, 74688 jobs nationally and 1067 jobs in Louisiana), an information clerk (SVP 2, DOT 237.367-046, 85,985 jobs nationally and 1268 jobs in Louisiana), or a sedentary escort driver (SVP 2, DOT 919.663-022, 170,321 jobs nationally and 2900 jobs in Louisiana).

The ALJ then posed a third hypothetical concerning a person of Brumfield's age, education, and vocational experience, who can only do sedentary work with occasional climbing, stooping, kneeling, crouching, and crawling, and who requires a sit/stand option at short intervals (Tr. pp. 43-44). The VE testified that the job of escort driver would be eliminated since he would not be able to change positions more often than every two to three hours (Tr. p. 44). The VE further testified that he would not be able to do any of the jobs if he had to take unscheduled breaks (Tr. p. 44).

The VE testified that a "light cashier" receives cash from customers in payment for goods or services, uses an adding machine or cash register, makes change, cashes checks, and issues receipts or tickets to customers (Tr. pp. 45-47). A light cashier is a light duty job which requires standing up to six hours in an eight hour day, as well as frequent reaching, handling, feeling, talking, and hearing (Tr. pp. 47-49). The VE testified that a light stock clerk job requires reaching, handling and fingering and probably bending (Tr. pp. 51-53). The light lobby attendant position involves occasional fingering (Tr. p. 54). The VE testified that

9

the bookkeeping clerk job is unskilled work and does not require special training (Tr. p. 55).

## ALJ's Findings

To determine disability, the ALJ applied the sequential process outlined in 20 C.F.R. §404.1520(a) and 20 C.F.R. §416.920(a). The sequential process required the ALJ to determine whether Brumfield (1) is presently working; (2) has a severe impairment; (3) has an impairment listed in or medically equivalent to those in 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("Appendix 1"); (4) is unable to do the kind of work he did in the past; and (5) can perform any other type of work. If it is determined at any step of that process that a claimant is or is not disabled, the sequential process ends. A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis. Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994), cert. den., 914 U.S. 1120, 115 S.Ct. 1984, 131 L.Ed.2d 871 (1995), citing Lovelace v. Bowen, 813 F.2d 55, 58 (5th Cir.1987).

To be entitled to benefits, an applicant bears the initial burden of showing that he is disabled. Under the regulations, this means that the claimant bears the burden of proof on the first four steps of the sequential analysis. Once this initial burden is satisfied, the Commissioner bears the burden of establishing that the claimant is capable of performing work in the national economy.

Greenspan, 38 F.3d at 237.

In the case at bar, the ALJ found that Brumfield has not engaged in substantial gainful activity since February 12, 2006, he had disability insured status through December 31, 2011, and that he has severe impairments of neck and low back pain, but he does not have an impairment or combination of impairments listed in or medically equal to one listed in Appendix 1 (Tr. p. 11-12). The ALJ also found that Brumfield is unable to perform his past relevant work as a construction laborer and welder (Tr. p. 14).

At Step No. 5 of the sequential process, the ALJ further found that Brumfield, a younger individual with a limited education, has the residual functional capacity to perform the full range of light work except that he is limited to only occasional climbing, stooping, kneeling, crouching, and crawling (Tr. pp. 12-14). The ALJ concluded that there are a significant number of jobs in the national economy which Brumfield can perform, such as cashier, stock clerk, grounds keeper, and lobby attendant (Tr. p. 15). The ALJ concluded that Brumfield was not under a "disability" as defined in the Social Security Act at any time through the date of the ALJ's decision on July 20, 2009 (Tr. p. 15).

## Scope of Review

In considering Social Security appeals such as the one that is presently before the Court, the Court is limited by 42 U.S.C. §405(g) to a determination of whether substantial evidence exists

in the record to support the Commissioner's decision and whether there were any prejudicial legal errors. McQueen v. Apfel, 168 F.3d 152, 157 (5th Cir. 1999). For the evidence to be substantial, it must be relevant and sufficient for a reasonable mind to support a conclusion; it must be more than a scintilla but need not be a preponderance. Falco v. Shalala, 27 F.3d 160, 162 (5th Cir. 1994), citing Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427 (1971). Finding substantial evidence does not involve a simple search of the record for isolated bits of evidence which support the Commissioner's decision but must include a scrutiny of the record as a whole. The substantiality of the evidence must take into account whatever in the record fairly detracts from its weight. Singletary v. Bowen, 798 F.2d 818, 823 (5th Cir. 1986).

A court reviewing the Commissioner's decision may not retry factual issues, reweigh evidence, or substitute its judgment for that of the fact-finder. Fraga v. Bowen, 810 F.2d 1296, 1302 (5th Cir. 1987); Dellolio v. Heckler, 705 F.2d 123, 125 (5th Cir. 1983). The resolution of conflicting evidence and credibility choices is for the Commissioner and the ALJ, rather than the court. Allen v. Schweiker, 642 F.2d 799, 801 (5th Cir. 1981). Also, Anthony v. Sullivan, 954 F.2d 289, 295 (5th Cir. 1992). The court does have authority, however, to set aside factual findings which are not supported by substantial evidence and to correct errors of law. Dellolio, 705 F.2d at 125. But to make a finding that substantial

12

evidence does not exist, a court must conclude that there is a "conspicuous absence of credible choices" or "no contrary medical evidence." Johnson v. Bowen, 864 F.2d 340 (5th Cir. 1988); Dellolio, 705 F.2d at 125.

## Law and Analysis

### Issues 1 & 3 - Brumfield's Residual Functional Capacity

First, Brumfield contends the ALJ failed to properly evaluate his residual functional capacity and failed to comply with SSR 96-8p.

A claimant's impairments may cause physical or mental limitations that affect what he can do in a work setting. Residual functional capacity is a medical assessment, based upon all of the relevant evidence, of the work a claimant can perform despite his or her limitations. 20 C.F.R. §404.1545, §416.945. Although the burden of proof in a disability case is on the claimant to show that he is unable to perform his usual line of work, once that fact is established, the burden shifts to the Commissioner to show that the claimant is able to perform some other kind of substantial work available in the national economy. Herron v. Bowen, 788 F. 2d 1127, 1131 (5th Cir. 1986), and cases cited therein. Also, Babineaux v. Heckler, 743 F.2d 1065, 1067 (5th Cir. 1984). The Commissioner has the burden to establish a claimant's residual functional capacity. Leggett v. Chater, 67 F.3d 558, 565 (5th Cir. 1995).

The ALJ has the responsibility for deciding a claimant's residual functional capacity. 20 C.F.R. § 404.1546, § 416.946. The ALJ must perform a "function-by-function" assessment of the claimant's ability to engage in work-related activities when making his RFC determination. SSR 96-8p. When making the RFC determination an ALJ must consider objective medical facts, diagnoses and medical opinion based on such facts, and subjective evidence of pain or disability testified to by the claimant or others. 20 C.F.R. § 404.1545(a). Moreover, the ALJ must specify the evidentiary basis for his RFC determination. SSR 96-8p. Myers v. Apfel, 238 F.3d 617, 620 (5th Cir. 2001).

The Fifth Circuit has consistently held that once the ALJ determines that a claimant suffers from a nonexertional impairment that prevents him from performing his past relevant work, the Commissioner must produce expert vocational testimony or other similar evidence to establish that other jobs exist in the national economy that the claimant can perform. Fields v. Bowen, 805 F.2d 1168, 1170 (5th Cir. 1986), and cases cited therein.

The value of a vocational expert is that he is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed. A vocational expert is able to compare all the unique requirements of a specified job with the particular ailments a claimant suffers in order to reach a reasoned conclusion whether the claimant can

14

perform the specific job. <u>Fields</u>, 805 F.2d at 1170.

While pain can be severe enough to create a disabling condition, the evaluation of a claimant's subjective symptoms is a task particularly within the province of the ALJ who has had an opportunity to observe whether the person seems to be disabled. <u>Elzy v. Railroad Retirement Bd.</u>, 782 F.2d 1223, 1225 (5th Cir. 1986); <u>Loya v. Heckler</u>, 707 F.2d 211, 215 (5th Cir. 1983). The ALJ's decision on the severity of pain is entitled to considerable judicial deference. <u>James v. Bowen</u>, 793 F.2d 702, 706 (5th Cir. 1986); <u>Jones v. Bowen</u>, 829 F.2d 524, 527 (5th Cir. 1987). Hence, the law requires the ALJ to make affirmative findings regarding a claimant's subjective complaints and articulate his reasons for rejecting any subjective complaints. <u>Falco v. Shalala</u>, 27 F.3d 162, 163-64 (5th Cir. 1994).

The ALJ rejected Dr. Cobb's vocational opinion that Brumfield could not perform any work, and also rejected a state agency non-physician adjudicator's assessment Brumfield can only perform sedentary work. The ALJ (also a non-physician) then concluded Brumfield can perform light work. As pointed out by Brumfield, although the ALJ cites the medical evidence of record, she does not indicate which evidence supports her determination that Brumfield can perform light work. No physician filled out a residual functional capacity assessment in this case, and there are no medical evaluations of Brumfield's strength limitations.

15

When Brumfield carried his burden of proving he has impairments which preclude him from returning to his past relevant heavy work, the burden shifted to the Commissioner/ALJ to prove Brumfield can perform some other work. The Commissioner/ALJ must meet that burden through medical evidence, and is precluded from making her own medical assessment. ALJ's have been warned by the courts against "playing doctor" and making their own independent medical assessments. <u>Frank v. Barnhart</u>, 326 F.3d 618 (5th Cir. 2002).

Although Brumfield complains the ALJ failed to cite the medical evidence on which she based her conclusion that he can perform light work, the ALJ appears to have based her conclusion on the lack of medical evidence in this case. The ALJ made findings as to Brumfield's pain and credibility (Tr. pp. 13-14):

> "The claimant has sought very little treatment during his alleged period of disability. As noted above, there was a gap in treatment from August 2006 to April 2008, except fo the injections in March 2007 and by his own report he had not sought treatment from anyone else during that time period. At the hearing, the claimant reported that he had sought treatment from other sources as he no longer sought treatment from Dr. Cobb, but he and his representative only submitted one document dated March 2009. So again the file reveals another gap in treatment from his July 2008 to March 2009. At the hearing, the claimant alleged numerous limitations. If he was in such pain from his impairments and has such limitations, one could assume he would have sought more treatment. As he did not, it undermines his allegations of a disabling impairment.
> \* \* \*
> "The claimant testified that he would play on the computer. He also testified that medications do not really affect his ability to think clearly. This

16

>    indicates the claimant has the ability to perform some work activities. To the extent the claimant contends he is unable to perform any work on a sustained basis, the evidence does not support such allegations."

Although Brumfield testified he can no longer afford to go to Dr. Cobb, the ALJ correctly noted that Brumfield had sought treatment infrequently and waited from July 2008 (when he last saw Dr. Cobb) to March 2009 to seek affordable treatment at the LSU Health Sciences Center. Despite the infrequency of Brumfield's treatments and the paucity of medical evidence, the medical evidence proves Brumfield has severe impairments which preclude the performance of heavy work. However, because the medical evidence does not indicate Brumfield's strength limitations, it does not support the ALJ's conclusion that Brumfield can perform light work.

The ALJ had an obligation to make a function-by-function assessment of Brumfield's residual functional capacity, and she failed to do so; for instance, nothing in the record explains why the ALJ found Brumfield can walk or stand up to six hours in an eight hour day, or can occasionally climb, stoop, kneel, crouch, and crawl.[1] Therefore, substantial evidence does not support the ALJ's conclusion that that Brumfield can perform light work.

Since substantial evidence does not support the conclusions of the ALJ and the Appeals Council, their decision is incorrect as a

---

[1] The ALJ should have requested a medical source statement describing the types of work Brumfield was still capable of performing. 20 C.F.R. § 404.1513(b)(6).

17

matter of law. However, this does not entitle Brumfield to a decision in his favor based upon the existing record. The record is simply inconclusive as to whether there are any jobs existing in sufficient numbers in the national economy which Brumfield can perform, given his true impairments. Therefore, Brumfield's case should be remanded to the Commissioner for further proceedings.

### Issues 2 & 3 - Treating Doctor's Opinion

Brumfield also complains the VE did not accept the opinion of his treating physician as to his ability to work.

The VE stated she would not give any weight to the opinion of Brumfield's treating physician, Dr. Cobb, that Brumfield cannot work. It is noted that the ALJ accepted Dr. Cobb's medical records on treatment and test results, rejecting only his unsupported opinion that Brumfield could not work. The ALJ is required to give substantial weight to the doctors' medical findings about a person's physical capacity to work, not to the doctors' vocational opinions about whether the person can work. Loya v. Heckler, 707 F.2d 211, 214 (5th Cir. 1983). Therefore, the ALJ could properly discount Dr. Cobb's assessment that Brumfield could not work.

### Conclusion

Based on the foregoing discussion, IT IS RECOMMENDED that the final decision of the Commissioner be VACATED and that Brumfield's case be REMANDED to the Commissioner for further proceedings consistent with the views expressed herein.

18

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the district judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) CALENDAR DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Alexandria, Louisiana, on this 6th day of February, 2012.

_____
JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE